William B. Brennan, Jr., J.
Upon the trial of this action the plaintiff discontinued against the defendant Federal Telefilms, Inc.; both parties stipulated that if liability were established upon any of the causes of action in the complaint or upon any of the counterclaims, the question of damages would be referred to the Special Beferee to hear and determine; and the court, after the close of the plaintiff’s case, dismissed the second cause of action against both defendants. The parties also stipulated that the questions of both liability and damages on the first counterclaim be referred to the Beferee for hearing and determination. There is thus left for decision here the question of liability on the first and third causes of action in the complaint and on the second counterclaim. It might also be noted with respect to the second counterclaim that paragraph No. 30 of the answer, pleading a measure of damages, has been stricken on the law.
On May 1, 1954, the plaintiff entered into a written contract of employment with the corporate defendant to act as an agent, contact man and salesman in the development, production and sale of television shows. The contract was to terminate after one year unless' the corporate defendant exercised its option to renew for an additional year. The plaintiff was to be paid during the pendency of the contract 25.% of the net profits of the corporate defendant from business brought in or created by the plaintiff, and a commission to be agreed upon in each instance for any sale by the plaintiff of any of the corporate defendant’s programs or ideas. Against these sums the plaintiff was to have the free use of office space and to be paid as an advance the sum of $163.46 each and every week. These weekly payments terminated six months later on November 1, 1954 and the circumstances under which the termination occurred form the nub of the controversy.
The plaintiff claims that a new oral contract in the nature of a joint venture was entered into on or about that date, while the defendants contend that the written contract continued in full force and effect notwithstanding the discontinuance of the advance weekly drawing account. The occurrences during the following six months are crucial. During that period of time plaintiff aroused the Schubert interests to an awareness of the financial potential of a property known as “ Men In Black ”, a series of dramatizations involving incidents in the lives of clergymen of various denominations. Plaintiff had a personal financial interest in this property, had been associated with its development since 1953, and had mentioned it to defendant Schubert in the Spring of 1954 before the written contract was *510 signed. The property was not exploited, however, until the six-month period following November 1, 1954, during which time the property was incorporated, a contract executed between the corporation and Schubert for the production of the show, and a further contract executed between Schubert and Federal Telefilms Inc. for the creation of a pilot film of one of the episodes and the subsequent filming of ensuing chapters should the property sell. Plaintiff was largely instrumental in bringing these things about.
During this period plaintiff did not receive the stipulated weekly amount of drawings provided for in the written contract, but did receive weekly checks representing commissions earned on the sale of another show called ‘ ‘ The Abbots ’ ’. On May 2, 1955, the day after the original contract would, by its terms, have expired, plaintiff and Schubert had a conference concerning their business relationship. Thereafter plaintiff continued occupying space in the corporate defendant’s office, continued receiving commission checks on “ The Abbots ”, continued his efforts to develop “Men In Black”, and received no weekly drawing account. The corporate defendant never exercised its option to renew the original written agreement.
In the Summer of 1955 ‘‘ Men In Black ’ ’, the name of which had been changed to “ Crossroads ”, was sold by the corporate defendant to the Chevrolet Division of General Motors for over two million dollars. Of this amount the corporate defendant received a sales commission, and plaintiff is here seeking a recovery of 25% of that commission.
The written contract between the plaintiff and the corporate defendant contained a clause which provided that, in the event of termination, plaintiff was to receive 10% rather than 25% of the commissions earned on properties developed or introduced by plaintiff during the term of the contract. The defendant, maintaining that the contract was not terminated until April 30, 1955, acknowledges an obligation to pay plaintiff only 10% of the commissions. Plaintiff maintains that the contract was terminated on November 1, 1954, when the salary advance ceased, and claims 25% of the commissions, not under the written contract but under the oral agreement which is said to have been made when the written agreement was terminated.
The first question to be determined is whether, in view of a stipulation in the written contract dated May 1, 1954, to the effect that it could not ‘ ‘ be varied except by an instrument in writing”, proof of the alleged oral agreement of November, 1954 was competent. We hold that it was not. The question *511 turns on the proof itself. If it were proof of actual termination of the written agreement by mutual consent, then it would have been competent, since the contract did not contain the statutory language of subdivision 2 of section 33-e of the Personal Property Law prohibiting termination except by written instrument, and the contract could therefore have been terminated orally by mutual consent. (Rodgers v. Rodgers, 235 N. Y. 408.) The proof here, however, only established the elimination of the clause in the contract providing for advance drawings, which did not in any way change the ultimate compensation under the contract, and also established that the terms of the contract were in all other respects continued. This is oral proof not of termination, but of change or variation, proof prohibited by subdivision 1 of section 33-c of the Personal Property Law. (See 1952 Report of N. Y. Law Rev. Comm., pp. 141-145.)
The written contract therefore stands as the measure of compensation due to the plaintiff from the corporate defendant for work performed by him up to May 1, 1955, when the contract by its terms expired, and the first cause of action is accordingly dismissed as against both defendants.
The third cause of action sounds in quantum meruit, and in view of the disposition of the first cause of action, it, too, is dismissed insofar as it seeks recovery for work performed between November 1, 1954 and May 1, 1955. Subsequent to May 1,1955, however, the plaintiff did further work in developing and exploiting the “ Men In Black ” property and performed this work at the special instance and request of the corporate defendant. He is therefore entitled to reasonable compensation for these services. (Smith v. Kirkpatrick, 305 N. Y. 66, 73; Elsfelder v. Cournand, 270 App. Div. 162, 165; Black v. Fisher, 145 N. Y. S. 2d 142, 145.) However, as there was never any express intention of the parties that the liability of the individual defendant be substituted for the liability of the corporate defendant for any of this work, this cause of action is dismissed in its entirety against the individual defendant.
The second counterclaim seeks damages by virtue of the levy made on property of the corporate defendant and proceedings taken by the Sheriff of the City of New York under a warrant of attachment obtained by the plaintiff. A motion to vacate the warrant was denied at Special Term, but, on appeal, the Appellate Division, Second Department, reversed the order below and granted the motion to vacate (see Lloyd v. Schubert, 5 A D 2d 885). Because the cause of action stated in the second counterclaim is not for wrongful attachment under a proper warrant, *512 but for damages sustained by virtue of a proper levy made under a warrant duly issued out of this court but subsequently vacated, there is no question that, if valid, the process would protect both the Sheriff and the plaintiff against liability for acts performed pursuant to it before it was vacated. The case of Day v. Bach (87 N. Y. 56) is a decisive authority that trespass will not lie for a levy under a valid attachment subsequently vacated for error. The process is a protection to the officer or party for whatever is done under it while it is in force and the vacation of the process for error does not convert into a trespass that which was legal until it was set aside (see, also, Hess v. Hess, 117 N. Y. 306, 309). To the extent, therefore, that the second counterclaim purports to state a cause of action for trespass or conversion by virtue of the proceedings under the warrant while it was in force, it would have to be dismissed because such an action founded on a warrant of attachment later vacated does not lie where the court has jurisdiction of the subject matter and of the parties. (McClellan Agency v. Cunningham, Nielsen & Molloy, 22 Misc 2d 372, 373, 374.)
However, the counterclaim also pleads the filing of an undertaking whereby American Surety Co. of New York undertook that if the defendants recovered judgment in the action or if the warrant of attachment were vacated the plaintiff would pay all costs which may be awarded to the defendants and all damages which the defendants, may sustain by reason of the attachment not exceeding $6,000. Although the undertaking-does not bear the signature of the plaintiff, it is in the usual form and under rule 25 of the Rules of Civil Practice it was not necessary for the plaintiff to join as a principal with the surety in the execution of the undertaking. (Hughes v. Frank M. Murphy, Inc., 169 Misc. 239, 242.) Consequently, to the extent that the second counterclaim rests upon the undertaking, it states a cause of action, even though the surety has not been joined as a party herein.
The matter of damages recoverable under the undertaking as limited by its terms and the amount stated therein will be referred to the Special Beferee for determination.
Consequently, the first cause of action is dismissed against both defendants. Liability is fixed against the corporate defendant on the third cause of action for work performed by the plaintiff subsequent to May 1, 1955 and this cause of action is otherwise dismissed against both defendants. Liability is fixed against the plaintiff on the second counterclaim subject to the limitations above noted. The issues of damages on the third cause of *513 action and the second counterclaim, as well as the issues of both liability and damages on the first counterclaim, are respectfully referred to the Honorable Frank F. Adel, Special Beferee, for hearing and determination, on consent of the parties.
Upon the filing with the Clerk of the Beferee’s determination, the Clerk shall enter judgment in favor of the plaintiff and against the corporate defendant on the third cause of action for the amount determined by the Beferee; in favor of the defendants and against the plaintiff on the second counterclaim for the amount determined by the Beferee; and as the Beferee shall determine with respect to the first counterclaim. Said judgment shall also provide for dismissal of the first and second causes of action and as above provided with reference to the third cause of action.